IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANNA MERIA POLK,                      §
                                      §
              Plaintiff,              §
                                      §
v.                                    §        CIVIL ACTION NO. H-08-1663
                                      §
US AIRWAYS, INC.,                     §
                                      §
              Defendants.             §


**MEMORANDUM OPINION AND ORDER**

Plaintiff, Anna Meria Polk, brings this action against defendant, US Airways, Inc., for civil rights violations arising under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 (§ 1981), as well as for fraud, intentional infliction of emotional distress, invasion of privacy, negligence, negligent hiring, and tortious interference with contract in violation of state law.  Pending before the court are US Airway's Motion to Dismiss (Docket Entry No. 8) and Plaintiff's Motion for Leave to Amend First Amended Complaint (Docket Entry No. 16).  For the reasons explained below defendant's motion to dismiss will be granted in part and denied in part, plaintiff's motion for leave to amend will be granted, and plaintiff will be ordered to file a third amended complaint within ten (10) days.

## I.  Factual and Procedural Background

On May 25, 2008, plaintiff filed an Original Complaint and Jury Demand (Docket Entry No. 1) in which she asserted claims for race and color discrimination and retaliation in violation of federal law, i.e., Title VII and § 1981, and a number of state law based claims.  The paragraph titled "Facts" in plaintiff's original complaint alleged that plaintiff has been employed by defendant as a flight attendant since August 14, 1989, that plaintiff was terminated by a supervisor on May 27, 2004, that plaintiff received a written termination letter on June 2, 2004, that plaintiff's union filed a grievance on her behalf, and that at an arbitration hearing held on May 15, 2007, defendant was held to have violated a Collective Bargaining Agreement when it terminated plaintiff's employment.[1]

On September 5, 2008, plaintiff filed a First Amended Complaint, in which she alleged additional facts.  Plaintiff alleged that prior to being discharged, she was subjected to disparate treatment by her supervisors.  Plaintiff explained that she was diagnosed with depression, that her confidential medical records were disseminated by her supervisors to other employees in direct violation of federal law "for discriminatory reasons and as a form of retaliation,"[2] and that following her release from the

---

[1]Plaintiff, Anna Meria Polk's, Original Complaint and Jury Demand, Docket Entry No. 1, p. 2.

[2]Plaintiff, Anna Meria Polk's, First Amended Complaint, Docket Entry No. 4, p. 3 ¶ 6.

hospital on January 15, 2004, she was contacted by her supervisor and scheduled to work while still under a doctor's care.  Plaintiff alleged that she "was subjected to disparate treatment because of her race African American and her white counterparts were not disciplined or directed to do things that she was ordered to do to keep her job.  This was in direct violation of 42 U.S.C. § 1981."[3]

On December 3, 2008, defendant filed the pending motion to dismiss (Docket Entry No. 8).  On January 5, 2009, plaintiff responded to defendant's motion to dismiss (Docket Entry No. 13), and on January 30, 2009, defendant replied (Docket Entry No. 15).  On February 6, 2009, plaintiff filed her motion to amend (Docket Entry No. 16), and on February 13, 2009, defendant responded (Docket Entry No. 18).

## II.  Defendant's Motion to Dismiss

Citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007), defendant moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because the claims that plaintiff has alleged are either time barred or factually insufficient to state a claim for which relief may be granted.  Alternatively, defendant argues that plaintiff's Title VII claims are barred because plaintiff failed to exhaust her administrative remedies.

---

[3]Id. at ¶ 7.

-3-

**A.    Standard of Review**

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Twombly, 127 S.Ct. at 1974.  A statute of limitations defense may be asserted by a Rule 12(b)(6) motion when that defense appears on the face of the complaint.  See Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 n.3 (5th Cir. 1997) (citing Kansa Reinsurance Co. Ltd. v. Congressional Mortgage Corp. of Texas, 20 F.3d 1362, 1366 (5th Cir. 1994)).

**B.    Federal Claims**

Plaintiff has asserted claims for race-based employment discrimination and retaliation under Title VII and § 1981.

1.   <u>Title VII</u>

Defendant argues that plaintiff's claims for employment discrimination and retaliation in violation of Title VII should be dismissed because plaintiff failed to exhaust her administrative remedies by filing a charge of discrimination with the Equal Opportunity Employment Commission (EEOC).[4]  The court agrees.

It is well settled that courts may not entertain claims brought under Title VII for which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC.  <u>See</u> <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378-79 (5th Cir. 2002), <u>cert. denied</u>, 123 S.Ct. 1287 (2003).  <u>See also</u> 42 U.S.C. § 2000e-5(e)(1).  While not uniformly viewed as a jurisdictional prerequisite, the filing of an EEOC charge "is a precondition to filing suit in district court." <u>Taylor</u>, 296 F.3d at 379 (quoting <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 789 (5th Cir. 1996)).  The filing of an EEOC charge triggers an investigation and a process pursuant to which voluntary compliance may be obtained and discriminatory practices and policies eliminated.  Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context." <u>Burlington Industries, Inc. v. Ellerth</u>,

---

[4]US Airway's Memorandum of Law in Support of Its Motion to Dismiss, Docket Entry No. 8, pp. 4-5.

118 S.Ct. 2257, 2270 (1998).   Civil complaints filed under Title VII may only encompass "discrimination like or related to allegation contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." National Association of Government Employees v. City Public Service Board of San Antonio, Texas, 40 F.3d 698, 711 (5th Cir. 1994). Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit.   Id.

Plaintiff has not responded to defendant's argument that her claims for employment discrimination and retaliation in violation of Title VII are subject to dismissal for the failure to exhaust administrative remedies.   Instead, plaintiff merely asserts that the employment discrimination and retaliation claims that she has asserted under § 1981 are not time barred because they are subject to a four-year statute of limitations.   In accordance with Local Rule 7.4, the court takes plaintiff's failure to respond to defendant's argument that the claims for employment discrimination and retaliation that she has asserted under Title VII are subject to dismissal for the failure to exhaust administrative remedies as a representation of no opposition.[5]   Accordingly, defendant's

---

[5]Local Rule 7.4 provides that "[f]ailure to respond will be taken as a representation of no opposition."   S.D. Tx. Civ. R. 7.4 (2000).

motion to dismiss plaintiff's Title VII claims for employment discrimination and retaliation will be granted.

    2.  <u>Section 1981</u>

The § 1981 claims for race-based employment discrimination and retaliation asserted in Plaintiff's First Amended Complaint are all based on allegations that her supervisors either denied or challenged her requests for sick leave and disseminated information about her diagnosis of depression to other employees because of her race, African American.  The Fifth Circuit has stated that race discrimination claims in the employment context brought under § 1981 are analyzed in the same manner as claims for race discrimination under Title VII of the 1964 Civil Rights Act, with the exceptions of their respective statutes of limitation and the requirement under Title VII that the plaintiff exhaust all administrative remedies.  <u>See Jones v. Robinson Property Group, L.P.</u>, 427 F.3d 987, 992 (5th Cir. 2005).

    (a)  Limitations

Because the factual allegations contained in Plaintiff's First Amended Complaint all concern conduct that occurred during her employment, plaintiff's § 1981 claims are governed by the four-year limitations period provided by 28 U.S.C. § 1658.  <u>See Jones v. R.R. Donnelley & Sons Co.</u>, 124 S.Ct. 1836, 1844-46 (2004).  Asserting that its discharge of plaintiff on May 27, 2004, is the only conduct about which plaintiff complains that occurred within four

years of the day plaintiff filed her original complaint on May 25, 2008, defendant argues that any other claim plaintiff may be attempting to assert is barred by limitations.  Plaintiff responds that she "has stated several claims that the courts would view as actionable under 1981,"[6] but fails to identify any particular claim.  Instead, plaintiff argues that she

> was continuously harassed and discriminated against from December 2002 because of her race African American and this orchestrated effort by US Airways, Inc., continued up until the time she was terminated on May 27, 2004. Everything U.S. Airways did from December 2002 to her date of discharge May 27, 2004 was evidence of racial discrimination and was one continuous action. [Plaintiff's] supervisors discriminated against her because of her race African American and intentionally disregarded her medical condition that prevented her from working on an everyday basis.   [Plaintiff] was continually harassed by her supervisors about whether or not her illness was severe enough to warrant time off of work even when her Physician provided documentation that she was suffering from chronic depression.  During the Arbitration process [plaintiff] testified that she was advanced to her first warning in the DCP program in 2001, when she was in the midst of a child custody battle which had a significant effect on her health and she was sick frequently.  [Plaintiff] testified that her request for medical leave was denied and she took a voluntary furlough from December 2001 to June 2002, when she returned to work.  After [plaintiff] returned to work her health problems persisted and in December of 2002, she spoke with her then supervisor, John Obrien.  [Plaintiff] recalled that Obrien suggested she look to the Employee Assistance Service.   [Plaintiff] did so and she received a medical diagnosis of chronic depression. U.S. Airways, Inc., supervisors [went] so far as to violate [plaintiff's] medical privacy by calling up to the Hospital she was in to determine the legitimacy of her illness.  Specifically, [plaintiff] was diagnosed with chronic depression by her Doctors and her confidential

---

[6]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 13, fifth unnumbered page.

medical records were disseminated by her supervisors to other employees in direct violation of HIPPA laws and regulations.    During one of her flights with U.S. Airways, employees were openly talking about [plaintiff's] medical information that was only privy to her supervisors and it has been documented in her arbitration hearing that the management of U.S. Airways has admitted to losing all or part of [plaintiff's] medical records which is another violation of HIPPA laws.   This private medical information was not protected by U.S. Airways and we believe that it was disseminated for discriminatory reasons and as a form of retaliation.

A white employee by the name of Linda Miller . . . has admitted to [plaintiff] that she has been out on FMLA [Family and Medical Leave Act] for at least 10 years with the same or similar issues as [plaintiff], but U.S. Airways has allowed her to keep her job.    Furthermore, [plaintiff] was denied FMLA when she in fact presented credible medical evidence from her Doctor that she was suffering from chronic depression.    [Plaintiff] was released from the hospital on January 15, 2004 but was still under doctor's care, when she was contacted by her supervisor about her illness.    The supervisor[s] scheduled [plaintiff] for work even though they knew she was suffering from chronic depression and was still under her doctor's care.[7]

Plaintiff's complaints about the denial of her requests for FMLA leave and the dissemination of information about her medical condition in retaliation for having taken sick leave appear to be time-barred because these events all transpired more than four years before plaintiff filed her original complaint on May 25, 2004.  Plaintiff attempts to avoid the apparent untimeliness of her complaints by characterizing them as part of a continuing violation.    Accordingly, plaintiff argues that she filed this action within four years of the last act of discrimination, i.e., her discharge.

---

[7] Id. at second through fourth unnumbered pages.

In <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272 (5th Cir. 2004), the Fifth Circuit explained the current state of the law in this area:

> This court has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. . . . Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. . . . The end goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely."

<u>Id.</u> at 279 (quoting <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 352 (5th Cir. 2001)).  The <u>Pegram</u> court explained that

> [t]he Supreme Court recently clarified the limits of the continuing violations doctrine.  In <u>Nat.'l R.R. Passenger Corp. v. Morgan</u>, the Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  Thus, each discriminatory act starts a new clock for filing charges alleging that act. . . .  In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment.  Noting that repeated conduct constitutes a part of the nature of hostile environment claims, the Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." . . .  Therefore, <u>Morgan</u> makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period.

<u>Id.</u> at 279-80.  In <u>Pegram</u> the court observed that the plaintiff had
alleged only discrete acts of discrimination, i.e., denial on
account of race of training opportunities, approval to participate
in defendant's MBA program, and interaction with clients, and did
not expressly assert that the cumulative effect of those discrete
acts created a hostile work environment claim.  <u>Id.</u> at 280.  <u>See
also</u> <u>Frank v. Xerox, Inc.</u>, 347 F.3d 130 (5th Cir. 2003) (employees
who complained of separate and varied acts and decisions that
occurred at different times and were discretely applied in
different ways to different employees did not constitute continuing
violations capable of saving time-barred claims).

        In this case Plaintiff's First Amended Complaint does not
expressly state that plaintiff is asserting a continuing violation
claim.   Instead, plaintiff's complaint asserts that defendant
discriminated against her by subjecting her "to disparate treatment
because of her race African American and her white counterparts
were not disciplined or directed to do things that she was ordered
to do to keep her job."[8]  In support of this claim plaintiff
alleges that

        [a] white employee . . . has been out on FMLA for at
        least 10 years with the same or similar issues as
        [plaintiff], but U.S. Airways has allowed her to keep her
        job.  Furthermore, [plaintiff] was denied FMLA when she
        in fact presented credible medical evidence from her
        Doctor that she was suffering from chronic depression.
        [Plaintiff] was released from the hospital on January 15,

---

        [8]Plaintiff, Anna Meria Polk's First Amended Complaint, Docket Entry No. 4, p. 3 ¶ 7.

> 2004 but was still under doctor's care, when she was
> contacted by her supervisor about her illness. The
> supervisor[s] scheduled [plaintiff] for work even though
> they knew she was suffering from chronic depression and
> was still under her doctor's care.[9]

Liberally construed, these factual allegations assert a claim for wrongful discharge grounded on race-based disparate treatment. The question is whether the events occurring before May of 2004 are part of a continuing violation and are therefore not time barred.

The Fifth Circuit explained that in order to rely on a continuing violation theory, a plaintiff must show "more than a series of discriminatory acts. [She] must show an organized scheme leading to and including a present violation . . . such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998). The court observed that the Fifth Circuit has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights. Id.

---

[9] Id.

The first inquiry is whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation. Plaintiff alleges that at some unspecified time defendant lost her medical records and that her supervisors disseminated information about her medical condition to other employees. Plaintiff also alleges that at some unspecified time she was denied FMLA leave and that in January 2004 she was scheduled to work while under a doctor's care. For purposes of this inquiry the court will assume without deciding that these acts constitute the same type of discrimination as that for which plaintiff alleges defendant discharged her in May of 2004.

The second inquiry is whether the acts are in the nature of recurring events, or are more in the nature of isolated events. These acts are more in the nature of isolated events. The loss of plaintiff's medical records, the dissemination of information about her medical condition to other employees, and the denial of her request for FMLA leave are not recurring events.

The third inquiry is whether the act or acts have the degree of permanence that should alert an employee to assert her rights. Plaintiff has not alleged that the loss of her medical records, the dissemination of information about her medical condition to other employees, or the denial of FMLA leave occurred more than once. While not as permanent as being discharged, these acts are permanent enough that plaintiff should have been alerted to assert her rights. Like discharge, loss of medical records, dissemination

-13-

of personal information, and denial of FMLA leave are "the sort of discrete and salient event[s] that should put an employee on notice that a cause of action has accrued" and do "not constitute a part of the same pattern of behavior that amounts to a continuous violation by rendering [plaintiff's] workplace a hostile environment." Id. at 240.

Applying the three factors utilized by the Fifth Circuit, plaintiff's complaints regarding conduct concerning loss of her medical records, dissemination of information about her medical condition to other employees, and denial of FMLA leave, all of which occurred prior to her discharge in May of 2004 are complaints about discrete events rather than a continuing violation. Accordingly, any claims, including claims for retaliation, that plaintiff may be attempting to assert based on these acts are time barred and cannot be utilized to support recovery on a claim for race discrimination in employment based on the theory of hostile environment.

(b)  Insufficient Pleading

Citing Twombly, 127 S.Ct. at 1955, defendant argues that any claim plaintiff may be attempting to assert under § 1981 for wrongful discharge is subject to dismissal because plaintiff has failed to allege facts that support each element of such a claim.[10]

_____

[10]US Airway's Memorandum of Law in Support of Its Motion to Dismiss, Docket Entry No. 8, pp. 7-8.

In <u>Twombly</u>, 127 S.Ct. at 1965, the Supreme Court held that a claim asserted under the Sherman Act's restraint of trade provision requires "a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  The Court explained that bare assertions of conspiracy are not enough to state a claim under the Sherman Act.  <u>Id.</u> at 1966.

Plaintiff alleges that she was subjected to disparate treatment because of her race, African American, and that her white counterparts were not disciplined or directed to do things that she was ordered to do to keep her job.  As evidence that she has been subjected to disparate treatment, plaintiff alleges that a white employee was allowed to keep her job even though she has been on FMLA leave for years.[11]  At this stage of the case, before evidence has been developed, plaintiff's allegations that a white employee has been out on FMLA leave for years with the same or similar issues as plaintiff and that US Airways has allowed her to keep her job, but has discharged plaintiff, are sufficient to survive defendant's motion to dismiss for failure to state a claim for which relief may be granted.  <u>See</u> <u>Swierkiewicz</u>, 122 S.Ct. at 997-999 (an employment discrimination plaintiff need not plead a prima facie case of discrimination but, instead, need only plead facts that give defendant fair notice of the basis for plaintiff's claims).

---

[11]Plaintiff, Anna Meria Polk's First Amended Complaint, Docket Entry No. 4, p. 3 ¶ 7.

**C.   State Law Claims**

Plaintiff's First Amended Complaint (Docket Entry No. 4) asserts claims based on state law for fraud, intentional infliction of emotional distress, invasion of privacy, negligence, negligent hiring, and tortious interference with a contract.  Defendant argues that these claims are all time barred.  Plaintiff does not dispute defendant's argument that her state law claims are all time barred but, instead, states that "Plaintiff has withdrawn its claims for fraud, intentional infliction of emotional distress, invasion of privacy, negligence, negligent supervision and training and tortious interference with a contract."[12]    Accordingly, plaintiff's state law claims will be dismissed as time barred.

### III.   Plaintiff's Motion for Leave to Amend

On February 6, 2009, plaintiff filed Plaintiff's Motion for Leave to Amend First Amended Complaint (Docket Entry No. 16).  Plaintiff seeks leave to amend

> to add additional facts . . . to the complaint that will
> support Plaintiff's cause of action under section 1981.
> These additional facts will help prove that U.S.
> Airways[] discriminated against Anna Meria Polk
> continuously during her employment and through her
> termination on May 27, 2004.[13]

---

[12]See Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, at first to sixth unnumbered pages.

[13]Plaintiff's Motion for Leave to Amend First Amended Complaint, Docket Entry No. 16, p. 1.

In support of her motion for leave to amend, plaintiff argues that the Docket Control Order entered on December 5, 2008, gave all parties until February 6, 2009, to file motions to amend pleadings, and that defendant will not be prejudiced by the amendment because the additional facts that plaintiff seeks leave to add to her complaint were all gathered from documents that were a part of the arbitration hearing concerning her Collective Bargaining Agreement with the defendant.   Plaintiff argues that

> [t]hese documents state that several white employees received preferential treatment from the Management of U.S. Airways, Inc. who were in the same predicament as Anna Polk.   These white employees were given numerous chances to remain with the Company prior to their termination.[14]

Defendant argues that plaintiff's motion to amend should be denied as futile because the additional facts that she seeks leave to add do not demonstrate disparate treatment.[15]

The Fifth Circuit recognizes that leave to amend shall be freely granted when justice so requires, <u>Goldstein v. MCI Worldcom</u>, 340 F.3d 238, 254 (5th Cir. 2003), and that Federal Rule of Civil Procedure 15 evinces a bias in favor of granting leave to amend. <u>Id.</u> (citing <u>Southern Constructors Group, Inc. v. Dynalectric Co.</u>, 2 F.3d 606, 611 (5th Cir. 1993)).   However, the Fifth Circuit has also stated that leave to amend under Rule 15 is by no means

---

[14]<u>Id.</u> at 1-2.

[15]US Airways' Response to Plaintiff's Motion to Amend, Docket Entry No. 18, pp. 1-2.

automatic.   Southern Constructors, 2 F.3d at 612.   The Supreme
Court has sanctioned bad faith or dilatory motive, repeated failure
to cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the
amendment, or futility of the amendment as plausible reasons for a
district court to deny a party's request for leave to amend.   See
Foman v. Davis, 83 S.Ct. 227, 230 (1962).

The record before the court demonstrates that plaintiff has
filed two complaints in this action:   an Original Complaint and
Jury Demand on May 25, 2008 (Docket Entry No. 1), and a First
Amended Complaint on September 5, 2008 (Docket Entry No. 4).
Attached to Plaintiff's Motion for Leave to Amend First Amended
Complaint is a proposed Second Amended Complaint.   Although the
proposed Second Amended Complaint does not assert the state law
claims that plaintiff originally asserted but has since withdrawn,
it continues to assert claims based on Title VII that the court has
concluded should be dismissed for failure to exhaust administrative
remedies, it fails to expressly allege the only § 1981 claim that
the court has concluded is not time barred, e.g., wrongful
discharge, and the list of damages sought appears to include both
items that plaintiff may already have recovered, e.g., back pay,
and items that plaintiff may not be entitled to recover, e.g.,
front pay.   Since the court has concluded that the factual
allegations contained in plaintiff's first amended complaint are
sufficient to state a claim for wrongful discharge based on race

-18-

under § 1981, plaintiff will be granted leave to amend her complaint to reassert that one claim, but will be ordered to do so by preparing and filing a third amended complaint.

### IV.  Conclusions and Order

For the reasons explained above, the court concludes that any Title VII claim plaintiff is attempting to assert under 42 U.S.C. § 2000e should be dismissed for failure to exhaust administrative remedies; that any claim plaintiff is attempting to assert under 42 U.S.C. § 1981 based on acts that occurred before May 25, 2004, should be dismissed as time barred; and that plaintiff's state law claims for fraud, intentional infliction of emotional distress, invasion of privacy, negligence, negligent hiring, and tortious interference with contract should be dismissed as time barred; but that the facts alleged in plaintiff's first amended complaint are sufficient to state a claim for wrongful discharge based on race in violation 42 U.S.C. § 1981.  Accordingly, US Airways Inc.'s Motion to Dismiss (Docket Entry No. 8) is **GRANTED in part and DENIED in part.**  Plaintiff's Motion for Leave to Amend First Amended Complaint (Docket Entry No. 16) is **GRANTED.**  Plaintiff is **ORDERED** to file within ten (10) days, a third amended complaint in accordance with this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 20th day of February, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE